**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1838-WJM-MJW

DONALD O'SULLIVAN,

      Plaintiff,

v.

GEICO CASUALTY COMPANY,

      Defendant.

---

## ORDER DENYING SUMMARY JUDGMENT

---

In this insurance dispute case pending under the Court's diversity jurisdiction, 28 U.S.C. § 1332, Plaintiff Donald O'Sullivan (Plaintiff, or "O'Sullivan") brings claims for breach of contract, for breach of the duty of good faith and fair dealing, for unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 & -1116 (*i.e.*, "statutory bad faith"), and for exemplary damages against Defendant Geico Casualty Company (Defendant, or "Geico").

Now before the Court is Defendant's Motion for Summary Judgment (ECF No. 60 (the "Motion," or "Defendant's Motion"), seeking judgment as a matter of law against all claims. For the reasons set forth below—centrally because genuine issues of material fact remain for trial as to Plaintiff's claim for contract reformation—Defendant's Motion is denied.

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND

The following facts (and those further detailed in Part III.A.3.a., below), are undisputed, except where attributed to one party or another, or to specifically cited evidentiary materials.

Plaintiff was insured by Geico under an automobile insurance policy effective as of August 17, 2013.  (ECF No. 60 at 4, ¶ 1.)  Plaintiff purchased this policy through Geico's website.  Specifically, he first visited www.geico.com on August 9, 2013 to obtain a rate quote, then returned to Geico's website to complete the online purchase of

the insurance policy on August 16, 2013.  (*Id.* ¶ 2.)

The central dispute raised by Geico's Motion relates to the information which Geico presented to Plaintiff regarding uninsured/underinsured ("UM/UIM") coverage during and after his visits to Geico's website.  Those facts are further detailed in the analysis below.  *(See* Part III.A.3.a.)

It is undisputed, however, that during Plaintiff's August 16, 2013 visit to Geico's website, he completed purchase of an auto insurance policy, and that Geico issued a policy with an effective date of August 17, 2013.  His policy was issued with limits of $100,000 per person/$300,000 per occurrence ("100/300" limits) for bodily injury liability ("BI") coverage, and limits of $25,000 per person/$50,000 per occurrence ("25/50" limits) for UM/UIM coverage.  (*See* ECF No. 60 at 14, ¶ 39; ECF No. 60-2 at 24.)

Plaintiff's position, however, is that he *intended* to purchase a policy with the same limits for *both* BI and UM/UIM coverage, and that at the time he purchased the insurance policy, he believed that he had, in fact, purchased a policy with 100/300 limits for both BI and UM/UIM coverage, rather than the lower UM/UIM limits he had actually purchased.  (*See* ECF No. 84-2 at 10 ("I thought that [the 100/300 BI limits] was all my coverage"); *id.* at 21.)

While covered by his Geico policy, Plaintiff was involved in an auto accident with an uninsured/underinsured motorist, on May 9, 2014.  (ECF No. 60 at 12, ¶ 48; ECF No. 72 at 12, ¶ 30.)  After resolving his claims with the other driver for the full limits of her insurance (ECF No. 72 at 12–13, ¶ 31), Plaintiff filed a claim with Geico seeking payment of over $164,000 in medical bills.  (*Id.* ¶ 32.)  Geico tendered $25,000 in

payment on Plaintiff's claim, that is, the full amount of the UM/UIM coverage limit as written in his insurance policy.  (*See* ECF No. 72-11 at 2.)  Plaintiff, through his attorney's communications and eventually in this lawsuit, has demanded that Geico provide UIM coverage up to a higher limit of $100,000.  Plaintiff argues that when Geico sold Plaintiff his insurance policy, it did not comply with its obligation, arising under Colorado Revised Statutes § 10-4-609(2), to offer Plaintiff "the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits," and that Geico therefore must provide UM/UIM coverage equal to his BI coverage limits.

### III.  ANALYSIS

**A.      Plaintiff's Claim For Contract Reformation**

The threshold issue raised in this case is whether Plaintiff is entitled to reformation of his insurance contract to provide UIM coverage up to $100,000, rather than the $25,000 limit reflected in the policy as written.  "Generally, the purpose of reformation of an insurance contract is to make the policy express the true intent of the parties. However, when a policy is violative of a statute, reformation is also required to assure that coverage will meet the statutory minimums."  *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 710 (10th Cir. 2005) (citing *Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. App.1996)).

1.      <u>Colorado Revised Statutes § 10-4-609(2)</u> & *Parfrey*

Here, the contested issue is whether Geico complied with Colorado Revised Statutes § 10-4-609(2), which requires insurers to offer potential customers the opportunity to purchase UM/UIM coverage at limits equal to their BI coverage limits:

> Before the policy is issued or renewed, the insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits.

Colo. Rev. Stat.§ 10-4-609(2).

In *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992), the Colorado Supreme Court interpreted this provision, holding that it requires auto insurers to provide their potential customers with notification "of the nature and purpose of UM/UIM coverage," and must offer them "the opportunity to purchase such coverage . . . in an amount equal to [their] [BI] liability limits." *Id.* at 912.  Describing how insurers must fulfill this obligation, the *Parfrey* court further held that insurers must "*do more than merely make UM/UIM coverage available*" at the higher rates, *id.* at 913 (emphasis added), and must provide notification to their potential customers "in a manner reasonably calculated to permit the potential purchaser to make an informed decision," about UM/UIM policy limits:

> Our determination that an insurer has a one-time duty of notification and offer does not resolve the extent of specificity essential to the proper discharge of that duty . . . . *Subsection (2) requires an insurer to do more than merely make UM/UIM coverage available at a level higher than the minimum motor vehicle liability limits of $25,000 per person and $50,000 per accident.*
>
> * * *
>
> In keeping with the legislative purpose of UM/UIM coverage to protect a person against the risk of inadequate compensation for injuries and damages caused by an uninsured or underinsured motorist, we hold that *an insurer's duty of notification and offer must be performed in a manner*

5

> *reasonably calculated to permit the potential purchaser to*
> *make an informed decision* on whether to purchase UM/UIM
> coverage higher than the minimum statutory liability limits of
> $25,000 per person and $50,000 per accident.

*Id.* (emphasis added).

Following *Parfrey*, the question of whether an insurer has adequately discharged this responsibility depends upon the facts in each case, but *Parfrey* identified several non-exclusive factors that may be informative:

> In determining whether an insurer has fulfilled its statutory
> duty, a court may appropriately consider such factors as
> [1] the clarity with which the purpose of UM/UIM coverage
> was explained to the insured, [2] whether the explanation
> was made orally or in writing, [3] the specificity of the options
> made known to the insured, [4] the price at which the
> different levels of UM/UIM coverage could be purchased,
> and [5] any other circumstances bearing on the adequacy
> and clarity of the notification and offer.

*Id.* However, "[i]n the final analysis, the determination of the insurer's discharge of its statutory duty to notify the insured of the availability of higher UM/UIM coverage and to offer such coverage to the insured must be resolved under the totality of circumstances." *Id.* at 914. Subsequent cases confirm that in applying this "totality of the circumstances" analysis, "no single factor is conclusive." *Johnson v. State Farm Mut. Auto. Ins. Co.*, 158 Fed. App'x 119, 122 (10th Cir. 2005) (internal quotation marks omitted; alterations incorporated).

   2.   Case Law Applying *Parfrey*

Since *Parfrey*'s "totality of the circumstances" test depends upon specific facts in each case, the Court will review in some detail several cases that have applied this standard to particular factual records relevant here.

6

a.   *Parfrey*

In *Parfrey* itself, after interpreting § 10-4-609(2) as detailed above, the Colorado Supreme Court applied this newly-stated rule, noting that the insurer "would be entitled to judgment as a matter of law only if it had adequately notified [the insureds] under § 10-4-609(2)."  830 P.2d at 914.  The facts there showed that after initially purchasing both UM/UIM and BI coverage at statutory minimum levels, the plaintiffs later increased their BI coverage (and also added a vehicle to the policy), but did not increase their UM/UIM coverage.  *Id.* at 908.

The insureds had conversations with the insurance agent when they made these policy changes, but did not recall discussing UM/UIM coverage on those later occasions.  *Id.*  The insurer presented evidence of the agent's "usual practice to notify an insured of the right to purchase UM/UIM coverage up to" the BI limits, *id.* at 914, and the agent had testified that he had "discussed different levels of UM/UIM coverage" with the insureds when the policy first issued, *id.* at 915.  However, plaintiffs' evidence was that the agent "did not inform them of the specific way in which that coverage operated." *Id.* at 914–15.

The court therefore concluded that genuine issues of fact remained as to whether the insured "complied with it statutory duty to inform the [insureds] *in a meaningful way* of the nature and purpose of UM/UIM coverage and to offer them the right to purchase UM/UIM coverage," at a higher level.  *Id.* at 915 (emphasis added). The Court therefore reversed the trial court's grant of summary judgment in favor of the insurer.  *Id.* at 914, 915.

7

b.      *Johnson*

Geico's Motion here relies principally on citation to *Johnson v. State Farm*, 158 Fed. App'x at 122.  (*See* ECF No. 60 at 26.)   In *Johnson*,[1] the plaintiff was injured while driving a borrowed car, which was insured under a policy purchased by the car's owners, not by the plaintiff.  *See id.* at 120.  Because the plaintiff "could not locate" the owners at the time of suit, he "lacked any firsthand knowledge of their discussions" with the insurance agent.   *See id.* at 121.  The insurance company moved for summary judgment, relying on an affidavit of its agent, which established that the policy had been issued after a "face-to-face meeting" with the purchaser and that it was the agent's usual practice that "[d]uring such meetings, she made policy holders aware of higher PIP limits, using a brochure . . . [which] provided a short explanation of PIP benefits, along with a chart showing the varying levels of available . . . coverage."  *Id.* at 122.

Applying the *Parfrey* totality-of-the-circumstances standard, the Tenth Circuit held that the insurance agent's affidavit and brochure were sufficient to demonstrate "a commercially reasonable offer," and that under the summary judgment analysis, the burden then shifted to the plaintiff to demonstrate a genuine factual dispute.  *Id.* at 122. Because plaintiff had not purchased the policy himself and had no contradictory evidence contesting the adequacy of the notice given to the policy purchaser, summary

---

[1] *Johnson* and several subsequent cases, including those cited here, have applied the *Parfrey* test for evaluating the adequacy of an insurer's notification and offer regarding UM/UIM coverage in the context of an insurer's separate statutory obligation to offer extended personal injury protection coverage ("PIP" or "extended PIP" coverage), arising under Colorado's No-Fault Insurance Act, Colo. Rev. Stat. § 10-4-710(2)(a).  *See Johnson*, 158 Fed. App'x at 121; *Reid v. Geico General Ins. Co.*, 499 F.3d 1163, 1168 n.2 (10th Cir. 2007).  These cases applying *Parfrey* are informative here for their factual analysis, and there is no doubt that the *Parfrey* standard applies in this UM/UIM case.

judgment was granted by the district court and affirmed on appeal.  *Id.*

        c.     *Harrison*

Plaintiff, on the other hand, relies heavily on *Harrison v. GEICO Casualty Co.*,
2010 WL 2004767 (D. Colo. May 19, 2010).  There, the insured visited Geico's website
and obtained rate quotes.  *Id.* at *2.  She was presented with various coverage options,
including the option to purchase UM/UIM coverage with "100/300" limits.  The website
offered the following brief definition of UM/UIM coverage:  "*Uninsured Motorist Bodily
Injury typically pays for you and your passengers' bodily injury damages caused by an
uninsured driver*," followed by a link allowing her to "*Learn More about Uninsured
Motorist Bodily Injury*."  *Id.* (emphasis added; capitalization as in original).  However,
there was no evidence that the plaintiff actually followed the "learn more" link or viewed
additional text.  *Id.*  After obtaining rate quotes on the website but being unable to
complete the policy purchase online at the quoted rates, plaintiff completed the policy
purchase over the phone.  *Id.* at *2–3.

Geico argued in *Harrison* that the plaintiff had received sufficient UM/UIM
notification under *Parfrey* as a matter of law.  See *id.* at *2.  The Court disagreed,
denying summary judgment and noting several points.  First, it held that "GEICO's
stuatory responsibility under . . . § 10-4-609(2) was not met" by the information on
Geico's website, since there was "no evidence that the [p]laintiff viewed any explanation
of UM/UIM coverage other than the brief definition."  *Id.* at *4.  Second, the court noted
that the pricing options presented to the plaintiff on the website had not actually been
made available.  *Id.*  Third, the Court held that "GEICO's obligation was to explain the

9

coverages and rate structures offered to Plaintiff during the telephone sales transaction
. . . with enough clarity to enable her to make an informed decision," but observed that
Geico had not claimed that it met the notification requirement during the telephone call.
*Id.* With no evidence of sufficient notification online or during the phone call, summary
judgment was denied.

        d.    *Reid*

        The parties also cite *Reid v. Geico General Ins. Co.,* 499 F.3d 1163, 1169 (10th
Cir. 2007), in which the plaintiff purchased an insurance policy by phone and therefore
"did not have the benefit of any written materials." 499 F.3d at 1169. After purchasing
the policy, however, the plaintiff received a written offer of enhanced PIP coverage in
the form of an "Option Form." *Id.* at 1165. Geico's evidence reflected that it sent the
plaintiff copies of the Option Form six times. *See id.* at 1165, 1169. On at least one
occasion, she signed and returned it. *Id.* at 1165.

        As characterized on appeal, the Option Form stated, that "[h]igher limits of PIP
coverage are available at your option," briefly explained the available options, and
included a box with pricing information in which the plaintiff could select the coverage
she wanted. *Id.* at 1166. The plaintiff declined all options, checking a box next to the
statement, "I do not want Additional PIP Benefits." *Id.*

        The Tenth Circuit affirmed summary judgment in Geico's favor, holding that the
Option Form "was reasonably calculated to permit [plaintiff] to make an informed
decision," noting the form "was in writing and clearly spelled out that 'higher limits of PIP
coverage were available at [plaintiff's] option,'" and explained the purposes of the

coverage in general terms.  *Id.* at 1169.  The court concluded that the plaintiff's "options

for enhanced . . . coverage were set forth, albeit briefly, in a cogent and understandable

format that included the key information that a reasonable purchaser would need to

make an informed decision," that "explained what the aggregate dollar limit would be for

each option, and "how much additional premium Ms. Reid would have to pay."  *Id.*

Given those observations, the court concluded that "the *Parfrey* factors weigh[ed] in

favor of GEICO."  *Id.*

       e.    *Hill*

     In *Hill v. Allstate*, 479 F.3d 735 (10th Cir. 2007), decided the same year as *Reid*,

the insured purchased a policy from an insurance agency, and the evidence showed

the agency's "standard procedure" had included discussion of the available coverages

during quotation, application, and signature phases of the insurance sale.  *Id.* at

737–38.  The insurance agent specifically recalled her communication, that plaintiff

"wanted to go with the basic . . . coverage," and that the agent offered to further explain

extended coverage.  *Id.* at 738.  After purchase, the insurer mailed policy documents

including a policy statement that "[o]ptional [PIP] coverages also are available," an

"Important Notice" summarizing the major policy coverages, and "an eight-page

description of the extended PIP coverages."  *Id.*  Subsequent renewal notices further

included a document titled "Important Notice—A Reminder for You" which explained

that additional PIP benefits "might be very important to you," noted the average price of

purchasing such coverage, and explained options for adding the coverage.  *Id.* at

738–39.

     The Tenth Circuit affirmed the grant of summary judgment in favor of the insurer,

holding "[w]hether we apply the specific factors set out in *Parfrey* or simply look at the totality of the circumstances . . . [the insurer's] offer was adequate and enabled [the insureds] to make an informed decision." *Id.* at 742. In particular, *Hill* emphasized that the insured "had a face-to-face meeting" with the insurance agent, and that the agent's testimony reflected that she had explained the various coverages, shown the insured his options, and had gone over the disclosure form with him. *Id.* at 742. *Hill* reaffirmed the statement from *Johnson*, that "the *Parfrey* analysis . . . required that the insured be given enough information to advise the insured of the availability of coverage and permit a reasonably informed decision on whether to purchase it." *Id.* at 742–43.

      f.   *Morris*

Finally, in *Morris v. Travelers Indemnity Co. of America*, 518 F.3d 755 (10th Cir. 2008), the Tenth Circuit reviewed a document that the insurer argued provided sufficient notice, which the panel characterized as "a series of tiny boxes in the middle of an extensive application form," which, "[i]f not explained by an agent . . . could be confusing." *Id.* at 760. While the insurer claimed that it had also provided an oral explanation, this was based only on an affidavit reflecting the agent's "routine practice" of reviewing the form with applicants and discussing its options, not a specific recollection of the communication. On those facts, *Morris* held that the information presented to the insured "did not comply with the statute and [was] not offered 'in a manner reasonably calculated to permit the potential purchaser to make an informed decision.'" *Id.* at 759–60 (quoting *Parfrey*, 830 P.2d at 913).

Furthermore, *Morris* court rejected the *insurer's* reliance on *Johnson* (on which Geico also relies here), reaffirming the Tenth Circuit's own characterization of the

12

relevant facts, specifically, that it was "evidence of a face-to-face meeting where [the insured] received a pamphlet explaining the different levels of coverage that [*Johnson*] held was sufficient to meet the insurance company's burden to establish it had made a compliant offer." *Morris*, 518 F.3d at 761 (citing *Hill,* 479 F.3d at 742). *Morris* likewise reiterated that the grant of summary judgment in *Hill* had been grounded in "an insurance agent's deposition testimony describing the specific discussion she recalled having with the insured," including discussion of "options that were compliant with the [statutory] requirements." *Id.* at 761–62.

* * *

Having reviewed the case law cited by the parties and highlighted above, the Court makes the following observations regarding how courts have applied the factors identified in *Parfrey* and its "totality of the circumstances" analysis:

*First*, the cases reviewed in which the insurer has shown that it made a sufficient offer of coverage as a matter of law (and therefore prevailed on summary judgment) involved either face-to-face meetings in which an insurance agent explained the relevant coverage options to the insured, as in *Johnson* and *Hill*, or paperwork which the insured signed and returned, confirming they had reviewed it, as in *Reid*.

*Second*, the information provided in documents that courts have found provided sufficient notice as a matter of law has tended to resemble the stand alone brochure highlighted in *Johnson* (which "provided a short explanation of [relevant] benefits, along with a chart showing the varying levels of available coverage"), *Johnson*, 158 Fed. App'x at 121; the brief, "cogent and understandable" option form reviewed and signed in *Reid* (which identified the insured's options and "included the key information" about

13

the coverage), *Reid*, 499 F.3d at 1169; or the explicit, repetitive, and prominent written notifications reviewed in *Hill* (there, also in conjunction with face-to-face communications), *see Hill,* 479 F.3d at 742.

*Third*, by contrast, courts have denied insurer's requests for summary judgment where the evidence shows confusing forms, *see Morris*, 518 F.3d at 760; information located only in the midst of extensive documents, *id.*; or only very abbreviated statements regarding the nature of UM/UIM coverage, *see Harrison*, 2010 WL 2004767, at *4.  *See also Morris,* 518 F. 3d at 761 ("bare description in non-specific terms of an agent's routine practice" was not "sufficient, by itself, to meet the insurance company's burden to establish a statutorily compliant offer"); *Parfrey*, 830 P.2d at 914–15 (evidence that insurance agent "did not inform [the insureds] of the specific way in which [UM/UIM coverage] operates" defeated summary judgment).

      3.   <u>Sufficiency of Geicos' UM/UIM Offer</u>

The Court now turns to applying the lessons of the case law detailed above to the record here.

      a.   *Factual Record*

The summary judgment record regarding Plaintiff's purchase of his Geico insurance policy, and Geico's notification and offer regarding UM/UIM coverage, is as follows:

The actual web pages that Plaintiff viewed and accessed on August 9, 2013 are not available.  (ECF No. 60 at 8, ¶ 4.)  In support of its Motion, Geico instead submitted the affidavit of an employee familiar with the Geico's website, attaching documentation of the rate quotes that were provided to Plaintiff, the completion of the policy sale, and

"exemplars" showing the website's pages as Plaintiff "would have viewed and accessed" them as of August 2013.  (*Id.* at 5, ¶ 5; *see generally* ECF No. 60-1 ¶¶ 3–16.)

For his part, Plaintiff testified in his deposition that he only "vaguely" remembers visiting Geico's website in August 2013 (ECF No. 94 at 2),[2] and that he remembers that he visited the website and purchased the insurance policy but does not "remember the steps of it" (ECF No. 84-2 at 12), and does not "remember the web page or the architecture of it," including what specific statements were displayed to him (*id.* at 21). Plaintiff therefore does not actually contradict Geico's evidence regarding what content Geico's website displayed, so the Court therefore generally credits Geico's evidence on this issue, while applying the summary judgment standard to view that evidence in the light most favorable to Plaintiff.

According to Geico's evidence, after entering his background information into Geico's website, Plaintiff continued to a page titled "Initial Quote," on which he had the option to adjust the requested policy limits for various types of coverage, including UM/UIM and BI coverage limits, using dropdown menus to select the requested limits. (*See* ECF No. 60-1 ¶ 10; *id.* at 18.)  As stated by Geico's employee, "[t]he selection of each coverage type and amount was independent of other coverage types," except that if Plaintiff had selected UIM limits higher than his BI limits, he would have received a warning informing him that his UIM coverage could not exceed his BI coverage.  (*Id.*

---

[2] All citations to docketed materials in this Order are to the page numbers shown in the ECF header, which sometimes differ from the documents' internal pagination, particularly where documents include prefatory materials such as tables of contents, and where the parties have filed only excerpts of longer documents, such as deposition transcripts and lengthy insurance documents.

¶ 10.)  Put another way, this page amounted to a table with several rows in which Plaintiff could select his limits or other options for each type of requested coverage, one on each row, and could then display re-calculated price quotes.  (*See id.* at 18.)

Next to the UM/UIM options, Geico's website stated that UM/UIM coverage "[c]annot be higher than your Bodily Injury (BI) limit" (*id.*), and Plaintiff could use the drop-down menu to increase his UM/UIM limits.  In addition, next to each type of offered coverage was a small question mark and, according to Geico's evidence, if the potential purchase "hovered over" the question mark next to UIM coverage, the following text (the "hover text") would have been displayed:   "*Uninsured & Underinsured Motorist coverage will pay for your injuries caused by an uninsured motorist*," followed by a link offering the option to "*Learn more about this coverage*," (*see id.* ¶ 11; *see also id.* at 18).  GEICO's evidence does not confirm whether or not Plaintiff viewed the "hover text."

If selected, the "learn more" link found in the "hover text" would have opened a new, smaller window (*i.e.*, a "popup window") displaying additional text which further explained what UIM coverage is.[3]  (*Id.* ¶ 11; *id.* at 21.)  Here, however, Plaintiff did

---

[3] The "learn more" text, if displayed, would have read:

**What is Uninsured/Underinsured Motorist Coverage?**

Uninsured/Underinsured Motorist coverage will pay for your injuries caused by an uninsured or, in some states, a hit-and-run driver.  Given the number of uninsured motorists driving on our highways today, this is very important coverage to have, even in states with no-fault insurance.  Only one premium is charged for Uninsured/Underinsured Motorist coverage regardless of the number of vehicles insured.  Therefore only one limit of protection applies to any claim arising out of any one accident to which this coverage is applicable.  This coverage is subject to the terms,

*not* click "learn more" or see this additional text.  (ECF No. 60-4 at 4.)

The evidence from Geico's employee indicates that Plaintiff used "Build Your Own Quote" options to change the limits for other types of coverage, but left the UM/UIM limits at the statutory minimum level ("25/50" limits).  Accordingly, when he completed his purchase, his policy included "25/50" limits for UM/UIM coverage and "100/300" limits for BI coverage.

After Plaintiff purchased the policy, Geico mailed him a packet of hardcopy materials, which included a Colorado Uninsured Motorists Coverage Option Form (the "Option Form").  (ECF No. 60 at 10, ¶ 40; *see generally* ECF No. 60-2.)  Plaintiff does not remember receiving the packet with hardcopy documents (ECF No. 72 at 7, ¶ 40); he testified that it was not his practice to open up the insurance documents he received and actually read them, and that he did not remember ever opening one of his Geico insurance packages to see what coverage(s) he had (ECF No. 94 at 4).

Among the hardcopy materials sent by Geico, the policy declarations page (apparently included as page 9 of 40 in the packet) clearly listed the coverages and limits of his policy.  (ECF No. 60-2 at 9.)  The declarations pages also included (as the fifth of nine bullet points in a box labeled "Important Policy Information") the statement,

---

limits and conditions of the policy contract.

Depending on the limits you choose, you may be required to sign an Option Form after you purchase your policy.  For your convenience, in some states you may sign the form electronically or you may choose to sign a paper copy of the Option Form which will be included in your new policy package.

Thus, even if Plaintiff had followed the "learn more" link, he would not have been shown any explicit statement regarding his right to purchase UM/UIM coverage with higher limits.

"[e]nclosed you will find a copy of the Colorado Uninsured Motorists Coverage Option

Form . . . . Please complete and return the option form . . . if you wish to reject

Uninsured Motorists Coverage or you wish to make any other change to your Uninsured

Motorists Coverage Limit."  (ECF No. 60-2 at 25.)

The Option Form was then included in the packet, evidently as page 11 of 40

among the hardcopy materials.  (*Id.* at 26–27.)  It stated, in part, "Please complete,

sign, and return this form to us *only if you wish to make changes*" (ECF No. 60-2 at 26

(emphasis added), after which is a paragraph that reads as follows:

### Uninsured Motorists Coverage (Includes Underinsured Motorists Coverage)

The state of Colorado requires that Uninsured Motorists
(UM) coverage be included on all automobile liability
insurance policies unless the policyholder specifically rejects
the coverage.  UM coverage provides protection to you and
your resident relatives for damages you are legally entitled
to recover as a result of bodily injury or death caused by an
owner or operator of an uninsured automobile, underinsured
automobile, or hit-and-run auto.  This coverage may also be
available for other persons when they are injured while using
your covered automobile with your permission.  You may
select limits up to but not exceeding your Bodily Injury
Liability limits or $300,000/$500,000 whichever is less.

(*Id.*)  Below this text the form provided options to reject UM coverage or to select

various coverage amounts ranging from 25/50 limits up to $300,000/$500,000 limits.

(*Id.* at 26–27.)  Plaintiff never signed or returned the Option Form, and his coverages,

as reflected on the declarations page, were not altered.

      b.    *Application*

On this record, the Court concludes that Geico is not entitled to judgment as a

matter of law against Plaintiff's breach of contract claim.  Initially, the Court's review

"look[s] to the objective reasonableness of GEICO's offer, not the potential purchaser's subjective understanding."  *Reid*, 499 F.3d at 1169.  Accordingly, Plaintiff's testimony that he *intended* to purchase higher UM/UIM limits and that he *believed* that he done so do not alter the Court's analysis of whether Geico's communications were objectively sufficient under the *Parfrey* test, that is, whether Geico extended a notification and offer regarding UM/UIM options "in a reasonable manner calculated to permit the insured to make an informed decision."  *Parfrey*, 830 P.2d at 913.

Unlike the legally sufficient notice provided in *Johnson* and *Hill*, it is undisputed here that relevant communications with Geico were exclusively online and by mail, including neither face-to-face meetings with an insurance agent nor telephone conversations or other interactive communications during which a Geico employee explained different coverages and options.  *Contra Morris*, 518 F.3d at 761, *and Hill*, 479 F.3d at 742.  While such face-to-face or interactive communications are not necessarily requirements for sufficient notice under *Parfrey*, their absence here substantially distinguishes this case from *Johnson*, which is the principal case on which Geico relies.  This is especially true since the Tenth Circuit's later (and published) opinions have since emphasized that the face-to-face communications and a simple explanatory brochure in *Johnson* were critical facts supporting the grant of summary judgment.  *See Morris*, 518 F.3d at 762.  *Johnson* therefore does not support Geico's position, and the lack of face-to-face, telephonic, or other interactive communications weighs against Geico under the *Parfrey* analysis.

As to the information presented on Geico's website, the "hover text," even if Plaintiff saw it, was not materially more informative than the very similar text found

19

insufficient in *Harrison*, and did not inform Plaintiff of his right to purchase UM/UIM coverage at higher limits.  The "learn more" text does not support Geico's Motion because the evidence shows that Plaintiff did not view it, and was not required to.  And, even if Plaintiff had viewed this "learn more" text, it also does not inform him of his right to purchase UM/UIM coverage at limits equal to his BI coverage.  (*See supra*, note 3.)[4]

The function of the drop-down menus, by themselves, would have *offered* Plaintiff the option to select a higher level of UM/UIM coverage, and it is true that he could observe or infer that he had the *ability* to purchase higher UM/UIM coverage. Likewise, the Geico website informed him that his UM/UIM limits could "not be higher than" his BI limits.  But *Parfrey* plainly requires an insurer to "*do more than* merely make UM/UIM coverage available" up to the limits required by statute, 803 P.2d at 913 (emphasis added), and requires the insurer to provide information reasonably calculated to facilitate an informed decision regarding UM/UIM coverage, *id.* at 913, 914.  Geico cannot show it complied with that requirement as a matter of law simply because the website would have allowed Plaintiff to purchase higher-limit UM/UIM coverage.

The only communication in which Plaintiff was directly informed of his right to purchase UM/UIM coverage at limits up to the level of his BI coverage was the Option

---

[4] Attached to the affidavit of Geico's employee regarding the content of Geico's website are additional documents that appear to be internal Geico work requests or similar documents reflecting text that Geico either included or considered including in its website, at unspecified dates.  (*See, e.g.*, ECF No. 60-1 at 28; *id.* at 32; *id.* at 46–47.)  Geico's Motion does not cite to or rely on these documents, and Geico does not claim Plaintiff saw them or submit evidence clarifying whether or not he *could* have seen them at the time he purchased his policy. Accordingly, while the presence of these documents in the record is somewhat confusing, and their purpose unclear, they do not alter the Court's summary judgment analysis.

Form.  (ECF No. 60-2 at 26.)  However, on the record here, the Court cannot conclude

that the Option Form, was, by itself, a legally sufficient notification and offer under

*Parfrey*, for several reasons.  Plaintiff was not required to sign and return this form

unless he sought to make changes to his coverage, as the form expressly stated.

Therefore, unlike *Reid*, Plaintiff did not sign or return this form confirming he had

reviewed the information it presented.

In addition, while the Option Form included a one-sentence statement advising

Plaintiff of his right to purchase UM/UIM coverage equal to his BI limits (ECF No. 60-2

at 26), that statement was found in the middle of the document, which itself was found

deep (page 11) into approximately 40 pages of documents mailed to Plaintiff after he

had purchased his policy.  Nothing called particular attention to either the Option Form

or this statement.  Further, applying the non-exclusive *Parfrey* factors, the Option Form

also did not include pricing information reflecting what it would have cost Plaintiff to

purchase higher UM/UIM coverage.  (*See generally* ECF No. 60-2 at 26.)  For all these

reasons, the Court finds the Option Form here was not comparable to the stand alone

explanatory brochure which provided adequate notice (in conjunction with an in-person

meeting) in *Johnson*, nor to the explanatory documents signed and returned by the

insured in *Reid*, nor to the detailed, repetitive, and prominent written notifications

provided in *Hill*.

In sum, considering the totality of the circumstances, Geico has not carried the

burden of showing that as a matter of law either its website information or the Option

Form discharged its duty to provide notification and offer of UM/UIM benefits in a

manner that was "reasonably calculated to permit [Plaintiff] to make an informed

21

decision on whether to purchase UM/UIM coverage" at limits higher than the statutory minimum and up to the level of his BI coverage.  *See Parfrey*, 830 P.2d at 913.[5]

## B.      Plaintiff's Other Claims

In addition to Plaintiff's claim for contractual reformation and breach of contract, Plaintiff also has pending claims for breach of the duty of good faith and fair dealing, for unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 & -1116 (*i.e.,* "statutory bad faith"), and for exemplary damages pursuant to Colorado Revised Statutes § 13-21-102.  (*See generally* ECF No. 41 at 8–9.)  Since Geico moves for summary judgment against all of these "extra-contractual" claims in abbreviated fashion and as a group, the Court also addresses them as a set (*i.e.*, collectively, Plaintiff's "bad faith" claims).  (*See* ECF No. 60 at 30–32.)

Initially, because the Court concludes that Geico has not shown it is entitled to judgment as a matter of law against Plaintiff's claim for contract reformation, Plaintiff's breach of contract claim survives.  This conclusion defeats Geico's primary argument against the bad faith claims, specifically, that they should fail absent a viable breach of contract claim.  (*Id.* at 29–30.)

As to Geico's remaining arguments, the Court concludes that genuine disputes of material fact remain regarding Plaintiff's bad faith claims and therefore denies summary judgment.  Geico argues that even if it is ultimately proved incorrect regarding the sufficiency of its notification regarding UM/UIM coverage, and is ultimately obligated

---

[5] Plaintiff has not filed a cross-motion for summary judgment.  The Court therefore holds only that Geico has not shown that its notification and offer were sufficient as a matter of law, it does not hold that Geico's notification was insufficient; the Court leaves it to the jury to consider that question under the totality of the circumstances.

to provide UM/UIM coverage up to the level of Plaintiff's BI limits, its conduct has nevertheless been reasonable as a matter of law because Plaintiff's claims and the adequacy of Geico's notification were fairly debatable.  (*See* ECF No. 60 at 29 (citing *Fincher v. Prudential Prop. & Cas. Ins. Co.*, 2007 WL 2936312, at *8 (D. Colo. Oct. 9, 2007)).)

Reliance on *Fincher* is misplaced, however, since there the Tenth Circuit reversed the district court's summary judgment determination *in the same case*, and remanded directing contract reformation.  *Fincher*, 2007 WL 2936312, at *2.  Thus in that very case, the court resolved an issue which was novel and fairly debatable, which was based on the insurer's interpretation of applicable law, and which therefore could be resolved as a matter of law.  *See id.* at *8 (explaining shifts in case law regarding whether statutory provision required auto-insurance coverage of certain pedestrian claims, and whether decisions resolving that statutory issue were themselves applicable retroactively).

Here, the determination of the sufficiency of Geico's notification and offer regarding UM/UIM coverage turns on the totality of the circumstances and is inherently factual.  Moreover, Plaintiff makes the fair point that the facts here are not meaningfully different from those in *Harrison*, which was decided in 2010, and that Geico had therefore been on notice that its UM/UIM notification procedures were inadequate for some three years prior to the time Plaintiff bought his insurance policy.  (*See* ECF No. 72 at 33–34; ECF No. 72-15 at 6–7.)

In addition, Plaintiff's anticipated expert testimony is to the effect that Geico's handling of his claim was contrary to established industry standards.  (*See generally*

23

ECF No. 72 at 32–91; ECF No. 72-14; ECF No. 72-15.)[6]  To be sure, Geico has

contrary expert testimony.  This contested expert testimony is sufficient to establish a

genuine dispute of fact regarding the reasonableness of Geico's conduct and therefore

makes summary judgment on the bad faith claims inappropriate.  *See generally Am.*

*Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343–44 (Colo. 2004) (holding that "[t]he

reasonableness of an insurer's conduct is measured objectively based on industry

standards," and discussing how such industry standards are commonly disputed and

established via expert testimony).

Furthermore, although it "is reasonable for an insurer to challenge claims that are

fairly debatable," *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App.

2003), Plaintiff's evidence here contests whether it was, in fact, "fairly debatable" for

Geico to deny his claim.  And, "[w]hile . . . an insurer may defend a fairly debatable

claim, all that means is that it may not defend one that is not fairly debatable.  But in

defending a fairly debatable claim, an insurer must exercise reasonable care and good

faith.  Stated another way, fair debatability is not a threshold inquiry that is outcome

determinative as a matter of law, nor is it both the beginning and the end of the analysis

in a bad faith case." *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1218

(Colo. App. 2010) (internal quotation marks and citations omitted).

---

[6] The Court will address Geico's pending motions regarding Plaintiff's expert witnesses by separate order.  Here, the Court only notes that at least some of their testimony is expected to be admissible at trial and, applying the summary judgment standards, the Court views that expected testimony in the light most favorable to Plaintiff, leaving any determinations of the weight or credibility of the testimony for the jury.

In sum, a genuine and material dispute remains as to the reasonableness of Geico's conduct in denying Plaintiff's claim; that is, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury crediting Plaintiff's evidence could conclude that Geico acted unreasonably when it rejected Plaintiff's demands for UM/UIM coverage up to the same level as his BI limits. Accordingly, Geico's request for summary judgment against Plaintiff's bad faith claims is denied.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant's Motion for Summary Judgment (ECF No. 60, public entry at ECF No. 61) is DENIED.

2.     Pursuant to the Court's prior order (ECF No. 88), this case REMAINS SET for a Final Trial Preparation Conference on March 24, 2017, and a 5-day jury trial commencing April 10, 2017. Counsel are directed to the undersigned's Revised Practice Standards (as revised effective December 1, 2016) as to remaining deadlines and procedures applicable to the Final Trial Preparation Conference, to trial, and to other pretrial filings and procedures.

3.     Pursuant to the Court's prior Order (ECF No. 91) denying without prejudice as premature Defendant's Rule 42(b) Motion to Bifurcate and for Separate Trials, Defendant is granted leave to re-file a motion to bifurcate no later than

---

[7] Geico does not raise separate arguments against Plaintiff's tort claim for breach of the duty of bad faith and fair dealing, and statutory claims for violation of §§ 10-3-1115 & 1116 and for exemplary damages. (*See* ECF No. 60 at 30–32.) The Court therefore also treats these issues together, concluding that the same evidentiary and factual disputes remain as to issues material to each claim and that summary judgment is inappropriate on each of these claims.

**February 6, 2017**, if Defendant in good faith remains of the view such relief is warranted under the current circumstances of this case.

Dated this 2nd day of February, 2017

BY THE COURT:

William J. Martínez
United States District Judge