**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1838-WJM-MJW

DONALD O'SULLIVAN,

      Plaintiff,

v.

GEICO CASUALTY COMPANY,

      Defendant.

---

## ORDER REGARDING PLAINTIFF'S EXPERTS TORRES AND BALDWIN

---

In this insurance dispute pending under the Court's diversity jurisdiction, 28 U.S.C. § 1332, Plaintiff Donald O'Sullivan (Plaintiff, or "O'Sullivan") brings claims for breach of contract, for breach of the duty of good faith and fair dealing, for unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 & -1116 (*i.e.*, "statutory bad faith"), and for exemplary damages against Defendant Geico Casualty Company (Defendant, or "Geico").

Now before the Court are Defendant's Motion to Strike Plaintiff's Expert Witness Robert Baldwin (ECF No. 71) and Defendant's Motion to Strike Report and Exclude Testimony of Plaintiff's Expert David Torres (ECF No. 73). For the reasons set forth below, both motions are granted in part.

## I. BACKGROUND

This case was filed in August 2015. The central claim is that at the time Plaintiff purchased his auto insurance contract, Geico did not provide adequate notification and

opportunity for Plaintiff to purchase uninsured/underinsured ("UM/UIM") motorist coverage at limits equal to the limits of his bodily injury liability coverage.  *See generally* Colo. Rev. Stat. § 10-4-609(2); *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905, 912–13 (Colo. 1992).  Plaintiff alleges that Geico is obligated to reform its existing insurance coverage to provide him with a higher level of UM/UIM coverage and has acted unreasonably in denying his claim and/or delaying payment of his insurance benefits, contrary to §§ 10-3-1115 & -1116.

As relevant here, the initial scheduling order set the deadline for affirmative expert disclosures at February 1, 2016, the date for rebuttal expert disclosures at March 1, 2016, the discovery cut-off date at April 22, 2016, and the dispositive motion deadline at May 24, 2016.  (ECF No. 21 at 9.)  Through several unopposed motions, which the Court granted, the parties mutually sought to extend the deadlines for affirmative expert disclosure and for discovery cutoff.  (*See* ECF Nos. 25, 38, 40, 48, 51.)[1]

The parties then timely exchanged affirmative expert disclosures on their new deadline to do so, April 18, 2016.  (*See* ECF Nos. 51, 71-1, 71-3.)  As relevant here, Plaintiff's affirmative disclosure included Mr. David M. Torres, an insurance claims consultant, and Geico's included attorney Jon F. Sands.

However, presumably through oversight, the parties had never requested any extension of the deadline to disclose *rebuttal* experts before Geico filed an unopposed motion on April 22, 2016, requesting such an extension.  (*See* ECF No. 55.)  This motion came several weeks after the existing rebuttal disclosure deadline (March 1,

---

[1] The parties did not, however, request an extension of the deadline to file dispositive motions.  (*See* ECF Nos. 48, 51.)

2

2016) had already passed, and after the parties had already exchanged their affirmative expert disclosures.  (*See id.*)

The Court granted Geico's request to reset the rebuttal disclosure deadline to May 18, 2016.  (ECF No. 55.)  The parties did *not*, however, seek any extension of the existing May 23, 2016 cutoff date for discovery, which was also the deadline to complete any experts' depositions.  (*See* ECF Nos. 51 & 55.)  Thus, by their own requests, as filed by Geico and granted by the Court, the parties set a case schedule which allowed only five days between the deadline for rebuttal expert disclosures (May 18, 2016) and the existing deadline to complete all discovery, including expert depositions (May 23, 2016).

On the re-set deadline for rebuttal expert disclosures, May 18, 2016, Plaintiff disclosed Robert M. Baldwin as a rebuttal expert (*see* ECF Nos. 71-4 & 71-8), and Geico disclosed Mr. Sands as its rebuttal witness (*see* ECF Nos. 58 & 71-5).

Neither party moved for any further extensions of deadlines, or for leave to complete additional discovery or supplementation of disclosures after the close of discovery.  Therefore—at least so far as far as the record before the Court reveals— discovery was completed by the existing deadline of May 23, 2016.  (*See* ECF No. 51; ECF No. 71 at 3.)  Geico filed a motion for summary judgment the same day (*see* ECF Nos. 60 & 61), and the motions now before the Court (ECF Nos. 71 & 73) followed on June 27–28, 2016.

## II.  GEICO'S MOTION TO STRIKE TORRES

The Court first addresses Geico's motion to strike Mr. Torres's report and to

exclude his testimony pursuant to Federal Rule of Evidence 702.  (ECF No. 73.)

## A.    Legal Standard: Rule 702

A district court must act as a "gatekeeper" in admitting or excluding expert

testimony.  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission

of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of
> an opinion or otherwise if: (a) the expert's scientific,
> technical, or other specialized knowledge will help the trier of
> fact to understand the evidence or to determine a fact in
> issue; (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied the
> principles and methods to the facts of the case.

Fed. R. Evid. 702.  The proponent of the expert testimony bears the burden of proving

the foundational requirements of Rule 702 by a preponderance of the evidence.  *United*

*States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

While an expert witness's testimony must assist the jury to be deemed

admissible, Fed. R. Evid. 702(a), it may not usurp the jury's fact-finding function.  *See*

*Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).  The line between what is helpful

to the jury and what intrudes on the jury's role as the finder of fact is not always clear,

but it is well-settled that "[a]n opinion is not objectionable just because it embraces an

ultimate issue."  Fed. R. Evid. 704(a).

Ultimately, "the rejection of expert testimony is the exception rather than the

rule."  Fed. R. Evid. 702 advisory committee's note.  "[T]he trial court's role as

gatekeeper is not intended to serve as a replacement for the adversary system. . . .

4

Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citations and internal quotation marks omitted).

## B.   Mr. Torres's Report & Opinions

Plaintiff disclosed Mr. Torres to offer opinions regarding Geico's handling of Plaintiff's underinsured motorist claim. (*See* ECF No. 73-1 at 1.)  His written report[2] indicates that he has "more than 25 years working in the insurance industry," evidently for State Farm. (*Id.*)  He worked in various claims-handling roles, including "16 years overseeing the adjusting of claims," and managing claims handling, including litigation in Colorado, New Mexico, and Nevada. (*Id.* at 2.)  He left State Farm in 2014 and has worked as a "claims practices consultant" since then. (*Id.* at 3.)

Mr. Torres's report recites that his above "background and experience" have made him "highly familiar with insurance industry customs and practices and industry standards." (*Id.*)  Mr. Torres makes clear that he is not a lawyer, although his report states that he is "familiar with the Model Unfair Claims Practices Act, which has been largely adopted in Colorado at [Colorado Revised Statutes §] 10-3-1104." (*Id.*)  He explains that "[i]f I state an opinion that an insurer failed to follow industry standard[s] and practices, I am opining that the insurer's conduct deviated from the norms of what insurers typically do in the handling of claims." (*Id.* at 3.)

Mr. Torres indicates that he reviewed various documents, correspondence,

---

[2] Neither party mentions, cites, or attaches excerpts from, any deposition testimony by Mr. Torres. (*See generally* ECF Nos. 73, 83, 90.)   The Court is therefore left to presume that Geico has not taken his deposition.

deposition transcripts and other factual and discovery materials from this litigation, including Geico's claim notes.  (*Id.* at 3–5.)  He also reviewed certain court opinions from other insurance litigation.  (*Id.* at 4.)

Mr. Torres's report then includes a narrative discussion of his views of the operation of the insurance industry, including sections on "General Principles of Insurance," "Role of Insurance Companies," the "Nature of Uninsured Motorist Coverage," and "Claims Handling Standards."  (*Id.* at 5–10.)  In this background discussion he includes several generic statements, such as noting that "[c]laims should be separated from profit consideration and should be handled appropriately and thoroughly" (*id.* at 6), and that "[i]t is well recognized in the insurance industry that often, an insured is in an especially vulnerable economic and personal position" when filing claims, and that "[c]laims personnel are trained to understand this important principle and . . . the importance of fulfilling the claims process" (*id.*).  He notes that "[i]nsurance companies should treat its [*sic*] policyholder's interests with equal regard as . . . its own," and notes that "[i]n Colorado, the General Assembly has recognized the need to ensure reasonable and prompt handling of first party claims by enacting [§§] 10-3-1115 and 1116, which provides [*sic*] that an insurer will not unreasonably deny payment of a claim for first party benefits."  (*Id.* at 7.)

As to uninsured motorist coverage, Mr. Torres explains that this is "first party coverage," and that handling such claims should be distinguished from handling third-party claims, specifically, that insurance companies should not "approach an UM claim with an adversarial eye," and should "promptly pay amounts due on first [party] claims."

(*Id.*)  As to claims handling standards, he outlines certain practices prohibited under relevant model guidelines and the Colorado Unfair Claim Settlement Practices Act (Colo. Rev. Stat. § 10-3-1104(1)(h)), stating these provisions and standards "should be familiar to all claim handlers in the insurance industry.  (*Id.* at 8–10.)

After setting out this background, Mr. Torres's report includes a factual narrative of the accident and claims-handling at issue in this case (*id.* at 10–13), followed by his analysis applying the outlined standards to Geico's conduct in this case (*id.* at 13–17). The analysis section of Mr. Torres's report repeats generic statements of certain supposed insurance industry standards (*e.g.*, "[t]reating their insureds with equal regard as to its own interest without turning the claims process into an adversarial process," and "[p]romptly and adequately communicating the basis for claims decisions").  (*Id.* at 14.)  Mr. Torres then sets out provisions of the Colorado Unfair Claims Settlement Act which he believes Geico violated in this case.  (*Id.*)  He concludes that based on his review he believes Geico has improperly taken an adversarial approach to handling Plaintiff's claim and has "refused to issue Underinsured Motorists Benefits without clear explanation."  (*Id.* at 15.)

Relevant to Plaintiff's claim that he is entitled to uninsured/underinsured coverage at a $100,000 policy limit, Mr. Torres opines that Geico's claims representative "was unaware if the limits . . . [were] explained to [Plaintiff]," and that she had a duty "to investigate whether [Plaintiff] was offered such higher limits."  (*Id.*)  Given his understanding of industry standards calling for coverage in cases of ambiguity or confusion, Mr. Torres further opines that Geico's claims representative should "err on

the side of her insured," and contrasts Geico's handling here with what he himself had done in similar cases and what the "leader in the insurance industry" (presumably he means his former employer, State Farm) does in a similar situations.  (*Id.* at 15–16.)

Mr. Torres also includes several concluding opinions.  (*Id.* at 16–17.)  Here, he opines that "[i]t appears GEICO may be basing . . . denial . . . on their own interpretation of the current claims environment in Colorado and this is egregious"; that insurance companies "do not get the choice of spinning current laws in Colorado to their own advantage"; and when faced with "different interpretations of the current claims environment, GEICO should err on the side of their insured, which is common practice in the insurance industry."  (*Id.* at 16.)  Noting Plaintiff's injuries and medical bills, Mr. Torres objects to Geico's requests for "prior records/bills" as "possibly" an effort to "devalue [Plaintiff's] claim."  (*Id.* at 17.)

Finally, noting that Plaintiff "was forced into litigation" in this case, Mr. Torres opines that Geico's conduct "constitutes an unreasonable delay and/or denial of [Plaintiff's] policy benefits," that Geico was aware of Colorado case law and "knew or should have known that it was disregarding [Plaintiff's] rights under his policy," and that "this claim was not adjusted consistent with GEICO's duty of Good Faith and Fair Dealing."  (*Id.* at 17.)

## C.   Analysis

Geico argues that Mr. Torres's anticipated expert testimony and opinions should be excluded under Rule 702 and *Daubert v. Merrell Dow Pharmaceutical*, 509 U.S. 579 (1993), for three reasons: (1) because he is insufficiently qualified (ECF No. 73 at 5–7);

(2) because his opinions are not based on a reliable application of sound principles to the facts of this case (*id.* at 7–11); and (3) because certain of his opinions amount to impermissible legal conclusions (*id.* at 11–13).  The Court addresses each argument in turn.

    1.   <u>Qualifications</u>

    The Court finds Mr. Torres is adequately qualified to testify as an expert under the standards of Rule 702.  Both the language of Rule 702 and Tenth Circuit precedent make clear that the "specialized knowledge" required for expert testimony "can be acquired through 'experience' and 'training.'"  *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (quoting Fed. R. Evid. 702).  Mr. Torres worked for decades in the insurance industry, in a variety of capacities relevant to matters on which he offers opinions here.[3]  His report reflects familiarity with the standards and practices used by his former employer, with standards published by industry bodies, and with statutory law that insurers in Colorado must follow.  His statement of relevant industry standards and his opinions on how they apply in this case plainly arise from that experience.  The Court finds his experience more than adequate to support his claim that his "background and experience" have made him "highly familiar" with industry customs and practices (*see* ECF No. 73-1 at 3), and also finds that this specialized knowledge

---

[3] Although Geico's motion references attachments to Mr. Torres's report and/or Rule 26 disclosure which evidently included his *curriculum vitae*, list of prior litigation testimony, and similar supporting materials (ECF No. 73 at 6), those pages are not among those docketed by either party (*see* ECF Nos. 73-1, 83-2).  Crediting the description of his professional background found in his written report (ECF No. 73-1 at 2–3), the Court concludes that he is adequately qualified under Rule 702(a), presuming the omitted documents provide further detail consistent with what is summarized in his written report.

based upon his employment training and experience will be helpful to the jury in this case.  Fed. R. Evid. 702(a).

Geico's arguments to the contrary are readily dismissed.  Geico argues that Mr. Torres "does not possess a higher level of knowledge skill, experience, training, or education than an ordinary person employed in the insurance industry."  (ECF No. 73 at 5.)  But the relevant standard is not whether he is more qualified than others in the insurance industry, but whether his "technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue."  Fed. R. Evid. 702(a).  The Court has little doubt that Mr. Torres has far more specialized knowledge of insurance industry practices and standards than does a typical juror, and finds this specialized knowledge will be helpful to the trier of fact.

To the extent Geico criticizes Mr. Torres's experience for having been gained primarily or exclusively at a single insurance company, that is a fact which opposing counsel can no doubt highlight on cross-examination, and which bears on the weight or credibility of Mr. Torres's opinions, but not on their admissibility.  *See Lovato v. Burlington N. & Santa Fe Ry. Co.*, 2002 WL 1424599, at *4 (D. Colo. June 24, 2002) ("Whatever shortcomings [the defendant] may perceive in [plaintiff's expert's] academic or professional background are more properly addressed in cross-examination.  [The defendant's] challenge to [his] qualifications go to the weight of the witness's testimony, and not to its admissibility.").

Finally, the Court flatly rejects Geico's suggestion that Mr. Torres is unqualified because he "only recently shifted his professional emphasis to providing expert witness testimony."  (ECF No. 73 at 6.)  The relevant expertise under Rule 702 is the subject

10

matter in which the witness holds specialized knowledge, not the skill or experience a witness has in testifying or working with lawyers.  In the undersigned's experience, both lawyers and juries are often better served by experts who have spent more of their time continuing to actively work in their relevant field, rather becoming full-time retained experts, whom juries may readily discount as "hired guns."

    2.    <u>Reliability</u>

Geico next argues that Mr. Torres's opinions do not rest on the "reliable application of reliable principles to the facts of this case," and/or "are not based on sufficient facts or data, as required by Fed. R. Evid. 702[(b)–(d)]." (*See* ECF No. 73 at 8–10.)  The Court again disagrees.

Geico first contests that although Mr. Torres listed documents, deposition transcripts, correspondence, and other documents and evidence among materials that he reviewed to reach his opinions, "he did not consider enough facts to support his opinions," and does not "identify any specific documents upon which his conclusions are based" or "link any identified evidence to his conclusions."  (ECF No. 73 at 9–10.)

As the Court reads this argument, it is really an attack that Mr. Torres's written report did not disclose the "basis and reasons for" his opinions with sufficient detail or specificity.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i).  The Court finds it sufficiently clear from the overall content and organization of Mr. Torres's written report that his methodology amounts to explaining what he knows of insurance industry standards and practices based on his experience, explaining the facts and evidence he reviewed in this case, then opining on the ways he believes Geico's handling of Plaintiff's claim fell short the relevant industry standards (as he understands them) and/or differed from handling of

similar claims in his experience.  The Court also finds that this method is, as a general matter, sufficiently reliable for Mr. Torres to offer admissible testimony under Rule 702.

Geico's principal complaint seems to be that Mr. Torres's written report does not provide factually-specific examples and explanations of his generically-stated criticisms of Geico's handing of Plaintiff's claim.  If Geico wanted a more detailed disclosure of *how* Mr. Torres reached his opinions, or more specific examples of the "specific documents upon which his conclusions are based" (ECF No. 73 at 10), its recourse in the first instance would have been to press for a more detailed report and/or to take Mr. Torres's deposition in the usual course of discovery.  Geico evidently did not pursue those options, instead choosing to proceed by means of a *Daubert* motion.  This tactical choice by Geico's counsel does not call for wholesale exclusion of Mr. Torres's testimony based merely on lack of specificity regarding some of his written opinions. *See* Fed. R. Evid. 705 (expert may state an opinion and give the reasons for it without first testifying to the underlying facts or data, but may be required to disclose such facts or data on cross-examination).

Moreover, the pending issue raised by Geico's *Daubert* motion is not the admissibility of Mr. Torres's written report (which the Court would not ordinarily admit into evidence), but whether Mr. Torres's testimony should be excluded as a whole as based on insufficiently reliable methods, pursuant to Rule 702.  Geico does not have any motion pending pursuant to Federal Rules of Civil Procedure 26 and/or 37 opposing the sufficiency of Mr. Torres's disclosure or arguing for appropriate relief on that basis.  Accordingly, having reviewed Mr. Torres's credentials and written report, and the parties' moving papers, the Court concludes that his method is sufficiently

12

reliable in general terms, and is sufficiently based on facts and data and a reliable

application of the same, so that he may testify under Rule 702.

In addition, the Court concludes that Mr. Torres's testimony (to the extent

consistent with his written report) would be relevant and helpful to the jury in this case.

It is true that trial courts may exclude expert testimony expounding insurance industry

standards on matters the jury can understand themselves, when relevance is in doubt,

when the proponent has not shown the testimony would assist the jury, or when the

testimony does not pass the Rule 403 balancing text. *Thompson v. State Farm Fire &

Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994).[4]   However, the Colorado Supreme Court

has recognized that in insurance bad faith cases, although expert witness testimony is

not required, it "can provide additional relevant evidence of the standard of care if the

standard is not within the common knowledge of the ordinary juror." *Am. Family Mut.

Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004).  Indeed, use of expert opinions to

establish industry standards in such cases is fairly common.  *See, e.g., Peden v. State

Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016); *Goodson v. Am.

Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 415 (Colo. 2004) ("The aid of expert

witnesses is often required in order to establish objective evidence of industry

standards.").

---

[4] *Thompson* is distinguishable from this case.  There, the Tenth Circuit found no abuse of discretion where the trial court excluded expert testimony in an instance where the relevant Oklahoma insurance statute did not create a private right of action.  *Id.*  Here, Plaintiff proceeds on a right of action explicitly granted by Colorado Revised Statutes §§ 10-3-1115 & -1116, and expert testimony regarding insurance industry standards is routinely admitted in Colorado insurance bad faith cases.  *See Goodson*, 89 P.3d at 415.

Here, the Court concludes that Mr. Torres's specialized experience and knowledge go well beyond the common knowledge of ordinary jurors and will assist the jury by providing evidence of relevant insurance industry standards.  Since Geico's own expert likewise offers his opinions regarding "applicable insurance industry standards" (*see* ECF No. 81-3 at 6–9, 12), Geico can hardly complain that all such testimony is irrelevant.  Moreover, the competing experts' opinions will guard against the possibility that the jury might be misled by hearing one-sided expert testimony on a non-scientific subject.

To be sure, the Court agrees with Geico that Mr. Torres's report might have been better written, could have disclosed more detail, given more specific explanations and examples, or provided clearer citations to industry publications and the factual record.  His written summary of claims-handling events is in places somewhat cryptic, and does not explain exactly what conclusions he drew from the record reviewed.  (*See, e.g.*, ECF No. 73-1 at 11 (summary of claims log includes entries such as "May 27, 2014, Atty LOR" and "May 29, 2014 doc faxed to atty").)  Some of those criticisms relate to the Court's exclusions detailed below.  But, to varying degrees, similar criticisms of how a written report could be improved are present in every case.  Again, such shortcomings bear principally on the weight or credibility of Mr. Torres's opinions but do not prevent him from testifying.  *See* Fed. R. Evid. 705.  The Court presumes that Geico's counsel will capably criticize the shortcomings of his opinions and will put on opposing evidence.

The Court therefore applies the usual rule that "the rejection of expert testimony is the exception rather than the rule," and that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

14

traditional and appropriate means of attacking shaky but admissible evidence."  Fed. R.

Evid. 702 advisory committee's note.

     3.   <u>Speculative Opinions</u>

     However, the Court does agree with Geico's contention that certain of Mr.

Torres's opinions—at least as phrased in his written report—are improperly speculative

or conclusory.  (*See* ECF No. 73 at 10.)  For instance, he opines that "[i]t appears

GEICO *may be* basing a portion of their denial on their own interpretation of the current

claims environment" (ECF No. 73-1 at 16 (emphasis added)), and "*may* also be basing

their denial of [Plaintiff's] claim based on the fact that they have a signed selection form

by one of the insured" (*id.* (emphasis added)).  Elsewhere, Mr. Torres states that he

"find[s] it interesting," that GEICO has requested certain medical records "to *possibly*

devalue" Plaintiff's claim.  (*Id.* at 17 (emphasis added).)  And in several places he offers

variations on the conclusory statement that Geico has "failed to produce information

[that] Uninsured/Underinsured coverage was explained and offered to [Plaintiff]," and

"has refused to issue Underinsured Motorists Benefits without clear

explanation/evidence," and "it *appears* their refusal/denial to do so is based on their

own interpretation of the current environment."  (*Id.* at 15.)

     The Court will, by necessity, defer until trial ruling on whether Mr. Torres has

articulated a sufficient foundation for the testimony and opinions that will actually be

offered in his trial testimony (and likewise cannot address before hearing the actual

testimony offered whether it was fairly within the contents of Plaintiff's disclosure, *see*

Fed. R. Civ. P. 26(a)(2) & Fed. R. Civ. P. 37(c)).  However, to the extent Mr. Torres's

testimony follows from his written report, speculative opinions surmising what "may"

have motivated Geico's decisions, or what facts "possibly" led to Geico's actions will be

excluded.  Nothing in the record reflects that Mr. Torres has knowledge of the

motivations or basis of Geico's actions other than as revealed in the claims file,

deposition testimony, and other factual materials he reviewed.  The Court will exclude

speculative or subjective opinions or commentary, including statements lacking

foundation as to what Geico was "possibly" attempting to do (*see* ECF No. 73-1 at 17),

or other testimony not grounded in a specific factual observation.  *See* Fed. R. Evid.

602 (witness must have personal knowledge of the matter); Fed. R. Evid. 703 (testifying

expert must have "been made aware of or personally observed" facts or data on which

she or he relies).

The Court will also exclude conclusory and prejudicial commentary such as Mr.

Torres's statements that it would be "egregious" to deny benefits based on an

insurance company's "own interpretation of the current claims environment" or "spinning

current laws . . . to their own advantage," or that Plaintiff "should be paid" benefits to

cover his "serious objective injury."  (*Id.* at 16, 17.)  *See generally* Fed. R. Evid. 403.

Nothing in Mr. Torres's written report actually explains *how* he believes Geico has

"spun" the relevant law or legal standards.  And, as further explained below, Mr. Torres

will not be permitted to offer opinions stating ultimate legal conclusions.  Mr. Torres can

testify as to how Geico's conduct differed, in factual terms, from the practices of other

insurers, from how he would have handled the claim in his experience, or from relevant

industry practices and standards (as he understands them).  He may not, however,

offer conclusory opinions as to whether Geico's UM/UIM offer was ultimately sufficient,

whether Plaintiff "should be paid," or whether Geico's conduct was unlawful or

16

"egregious," nor generalizations hinting at "different interpretations of the current claims environment" without ever explaining what "different interpretations" he has in mind. (*See id.* at 16.)

    4.    <u>Ultimate Issue and Legal Opinions</u>

Lastly, Geico objects that certain of Mr. Torres's opinions contain impermissible legal conclusions that will not assist the jury. (*See* ECF No. 73 at 11–13.)  Mr. Torres correctly acknowledges that he is not a lawyer. (*See* ECF No. 73-1 at 3.)  But, he nevertheless goes on to offer several legal conclusions among his opinions.  For example, he opines that Geico's conduct violated various provisions of the Colorado Unfair Claims Settlement Act (ECF No. 73-1 at 14), and that Geico's conduct "constitutes an unreasonable delay and/or denial of [Plaintiff's] policy benefits," contrary to § 10-3-1115, and was "not . . . consistent with GEICO's duty of Good Faith and Fair Dealing."  The Court will exclude such legal conclusions.

An expert's opinion is not inadmissible simply because it embraces an ultimate issue to be determined by the trier of fact.  Fed. R. Evid. 704(a).  Here, the central issue in dispute is the reasonableness of Geico's conduct.  The reasonableness of an insurer's conduct is "determined objectively, based on proof of industry standards," *Goodson*, 89 P.3d at 415, and the jury will be tasked with deciding whether Geico's actions were reasonable based, in large part, on the parties' competing expert testimony regarding insurance industry standards.  Thus Mr. Torres may offer testimony articulating what he believes to be the relevant industry standards, and explaining—factually—how Geico's conduct did or did not comport with those standards.

17

However, an expert witness's testimony may not usurp the jury's fact-finding function.  *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988); *see also Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992) ("While an expert may not state legal conclusions, Fed. R. Evid. 704(a) allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact.").  The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but in adopting Rule 704, the drafters of the Federal Rules of Evidence provided some guidance as to what is permissible expert testimony:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions.  Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.  These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.  They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.  Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural object of his bounty to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704 Advisory Committee's Note.

Applying this guidance here, Mr. Torres may testify as to insurance industry standards, which may include his testimony and opinions explaining how he believes Geico's conduct differed from the conduct of other insurers or fell short of industry standards.  Mr. Torres may not, however, offer ultimate legal opinions, and he "may not simply tell the jury what result it should reach without providing any explanation of the

criteria on which that opinion is based or any means by which the jury can exercise independent judgment. *United States v. Richter*, 796 F.3d 1173, 1195–96 (10th Cir. 2015).

The Court will therefore exclude opinions of Mr. Torres that Geico's conduct was unreasonable or insufficient as a matter of law, or was in violation of any statute.  He is unqualified to offer such opinions as a matter of legal expertise, Fed. R. Evid. 702(a), and such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function.  *See Specht,* 853 F.2d at 808; *Richter*, 796 F.3d at 1195–96; *see generally* 1 Kenneth S. Broun, *et al.*, *McCormick on Evidence* § 12 (7th ed., June 2016 update) ("Even a court which does not automatically ban opinion on the ultimate issue may condemn a question phrased in terms of a legal criterion that is not adequately defined").

To illustrate, Mr. Torres may offer an explanation, consistent with his written report, of how Geico's communications with Plaintiff offering him UM/UIM benefits differed from the practices of other insurers or from industry standards.  (*See* ECF No. 73-1 at 15 (explaining that "the leader in the industry obtains signed waivers if the liability and uninsured/underinsured limits are different").)  He may also offer testimony explaining how industry standards (as he understands them) suggest that Geico's claims-handler should have acted to investigate what information regarding UM/UIM coverage was provided to Plaintiff, and thereafter how to proceed on his claim, based on the factual information shown in the record.  (*Id.*)  However, he may not offer an opinion that Geico's information or explanation regarding UM/UIM benefits was ultimately insufficient, since that is a legal conclusion which the jury will be charged to resolve.  (*See id.*)

19

Likewise, regarding Geico's handling of Plaintiff's claim, Mr. Torres may articulate what he believes were the relevant industry standards applicable to handling such a claim.  He may opine whether and how, based on the facts reviewed, he believes Geico departed from those industry standards (*see, e.g.*, ECF No. 73-1 at 16 (explaining that in cases where UM/UIM coverage varied from liability coverage, it would have been his former employer's practice to provide equal levels of UM/UIM coverage if they could not determine the insured was provided an adequate explanation of UM/UIM limits).)  But he may not offer an ultimate opinion that Geico's handling was, overall, unreasonable or constituted an unreasonable delay or denial of benefits.  (*See id.* at 17.)  Likewise, he may not offer an ultimate opinion that Geico's conduct was contrary to its duty of good faith and fair dealing or was in violation of Colorado statutes.  In short, he may testify as to insurance industry standards, but not as to his opinion of what Colorado law requires.

5.   Summary of Rulings

Given the above analysis, Geico's motion to exclude Mr. Torres's testimony is granted in part and denied in part.  To help guide counsel in preparing for trial, the Court specifically re-articulates the effect of the rulings set out above as follows:

Subject to ordinary objections and evidentiary rulings at trial, Mr. Torres *may* testify:

- Explaining his experience and credentials, and the materials he has reviewed in this case, consistent with pages 1–4 of his written report (ECF No. 73-1 at 2–5);

- Explaining his knowledge of "General Principles of Insurance," the "Role of Insurance Companies," and the "Nature of Uninsured Motorist Coverage," consistent with pages 4–7 of his written report (*id.* at 5–8);

- Explaining his understanding of the sources of insurance claims handling standards, and his articulation of such standards, consistent with pages 7–9, 13 & 14 of his written report (*id.* at 8–10, 14, 15);

- Explaining the background of the accident and Plaintiff's insurance claim in this case, as he understands it based upon his review, consistent with pages 9–12 of his written report (*id.* at 10–13);

- Offering his "Analysis" and opinions to the extent he explains how, based upon his review of the record, Geico's conduct differed from his understanding of insurance industry standards, including:

  - His opinion that Geico "has taken an adversarial approach" to handling Plaintiff's claim (*id.* at 15);

  - His understanding of the conduct of Geico's claims investigation based on his review of the testimony of Geico's claims handler, Ms. Nop (*id.*);

  - His opinion that Ms. Nop, consistent with insurance industry standards, should have investigated whether and how Plaintiff was offered UM/UIM benefits (*id.*);

  - His opinion that "[i]f her investigation determined the information was not explained . . . she should err on the side of her insured" (*id.*);

  - His testimony regarding how "the leader in the insurance industry" offers its customers UM/UIM benefits and policy limits and handles UM/UIM claims arising in situations similar to the claim at issue here (*i.e.*, where liability and UM/UIM limits differ), and whether Geico's investigation of its UM/UIM offer and resulting claims handling were consistent with industry standards (*id.* at 15–16).

Other than as stated above, Mr. Torres's testimony and opinions will be excluded as unduly speculative, prejudicial, lacking foundation, and/or offering impermissible legal conclusions, as analyzed above.  In other words, all portions of his "analysis" not fairly described within the above list of areas of admissible testimony will be excluded.  This specifically includes exclusion of any legal conclusions, including opinions that Geico acted "unreasonably" in its claims handling or that Geico violated and statute, violated

21

the duty of good faith and fair dealing, or violated any other articulated legal duty.

### III.  GEICO'S MOTION TO STRIKE BALDWIN

As summarized above, Plaintiff disclosed Mr. Baldwin as a rebuttal expert following Geico's disclosure of Mr. Sands.  Both Mr. Baldwin and Mr. Sands are attorneys.  Geico argues that Plaintiff's disclosure of Mr. Baldwin was an improper rebuttal expert disclosure and went beyond the limits of rebutting the opinions of Mr. Sands.  Therefore, Geico argues, Mr. Baldwin should have been disclosed as an affirmative expert and so his disclosure was untimely.  Geico seeks to exclude Mr. Baldwin's testimony in its entirety pursuant to Rule 37(c).  (*See* ECF Nos. 71, 89.)

### A.    Legal Standard:  Rules 26(a)(2) & 37(c)

Rule 26(a)(2) governs pretrial disclosure of anticipated expert testimony, including the timing of disclosure for both affirmative and rebuttal expert testimony.  Here, the relevant disclosure provision is Rule 26(a)(2)(D)(ii), which provides rebuttal may follow affirmative disclosures, "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party."

Federal Rule of Civil Procedure 37(c) provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  The sanctions available under Rule 37(c) are often described as "self executing" and "automatic."  Fed. R. Civ. P. 37 advisory committee's notes to 1993 Amendment.

However, in addressing Rule 37 generally, the Tenth Circuit has made clear that "[t]he protections and sanctions found in the discovery rules are not absolute and

22

contemplate the use of judicial discretion." *Marshall v. Ford Motor Co.*, 446 F.2d 712, 713 (10th Cir. 1971); *see also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (recognizing that Rule 37(c) vests broad discretion with the trial court).  In particular, "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  *Id.*

## B.   Analysis

As detailed above, Plaintiff affirmatively disclosed Mr. Torres, a long-time insurance claims handler, to offer opinions as to whether Geico's offer of UM/UIM insurance and its handling of Plaintiff's claim were consistent with industry standards and practices.

Geico affirmatively disclosed Mr. Sands, an attorney.  (*See* ECF No. 81-3.)  His affirmative report includes a substantive recitation of what he states are "Applicable Insurance Industry Standards."  (*Id.* at 6–9.)  He states that "[t]his matter involves two primary issues," which he then analyzes.  (*See id.* at 6.)  *First*, he opines that Geico complied with its obligation to offer Plaintiff UM/UIM limits equal to his bodily injury liability limits, in particular applying the test and factors set out in *Parfrey*, 830 P.2d at 912–13, and subsequent cases.  (*Id.* at 10–11).  Because of his view that Geico met the standard required by *Parfrey*, he also opines that Geico acted reasonably when it reached the same conclusion and therefore declined to provide Plaintiff with higher UM/UIM coverage than was written in his insurance contract.  (*Id.*).  *Second*, he opines that Geico conducted a reasonable investigation of Plaintiff's claim, including a reasonable investigation of its own UM/UIM offer.  (*Id.* at 12.)

Plaintiff's disputed disclosure of Mr. Baldwin counters Mr. Sands's opinion,

arguing that Geico's offer of UM/UIM coverage was insufficient under *Parfrey*.  (*See* ECF No. 81-2 at 2–6.)  He then opines that Geico's claim handling was unreasonable, including an analysis of case law similar to that cited by Mr. Sands.  (*Id.* at 6–8.)  This is followed by an argument that Geico should have further evaluated Plaintiff's injuries, because "a reasonable insurer would have evaluated [Plaintiff's] claim at substantially more than the $100,000 in coverage that he was requesting" and would therefore have analyzed its "chance of a successful defense," including its exposure to potential statutory damages and award of attorneys' fees pursuant to §§ 10-3-115 & -1116. (*Id.* at 8–10.)  Mr. Baldwin opines this is analysis that "any reasonable insurer should do" and is "standard in the industry."  (*Id.* at 10).

Geico argues that Mr. Baldwin's opinions are affirmative in nature and were therefore untimely and should be excluded.  (*See generally* ECF No. 71 at 7–10.)  Rule 26(a)(2)(D)(ii) provides that rebuttal expert testimony is testimony which is "intended solely to contradict or rebut evidence on the same subject matter identified by another party."  Here, the question therefore becomes what was the "same subject matter" identified by Geico's expert, Mr. Sands, which was properly open to rebuttal testimony. The opinions of Mr. Torres, Mr. Sands, and Mr. Baldwin all bear on the same central issue in dispute, that is, the reasonableness of Geico's conduct, but they do not all address the same aspects of that issue.  The Court concludes that Mr. Baldwin's opinions fall within the "same subject matter" as Mr. Sands's opinions, but not necessarily those of Mr. Torres.

As noted earlier, Mr. Torres is not a lawyer.  He did not (and could not) offer legal analysis of the case law, including the law following the *Parfrey* decision that sets the

24

standard for an insurance company's notification and offer of UM/UIM limits equal to bodily injury liability limits.  Although he evidently reviewed certain court decisions in preparing his report, he did not discuss them or offer any opinions regarding them. (See *generally* ECF No. 73-1.)  Rather, as detailed above, Mr. Torres's opinions arise not from legal analysis but from his experience working in insurance claims, including his views of how Geico's competitor(s) might have handled Plaintiff's claim differently.

Mr. Sands, however, is a lawyer.  He both cited and discussed applicable court decisions in reaching his opinions as to the reasonableness of Geico's conduct.  (*See generally* ECF No. 81-3.)  As to the adequacy of Geico's offer of UM/UIM benefits under *Parfrey*, this appears to be an issue on which Geico bears the burden of proof. *See Morris v. Travelers Indemn. Co. of Am.*, 518 F.3d 755, 761 (10th Cir. 2008) (noting evidence relied upon in *Johnson v. State Farm Mut. Auto. Ins. Co.*, 158 Fed. App'x 119 (10th Cir. 2005) that "was sufficient to meet the insurance company's burden to establish it had made a compliant offer").  It therefore seems unremarkable that Geico affirmatively disclosed an expert on this issue, who was in turn subject to Plaintiff's rebuttal disclosure, from an attorney, offering legal analysis directly responsive to the subject area first raised by Mr. Sands.

As to the reasonableness of Geico's investigation, Mr. Torres addressed this question in large part by analyzing whether Geico's claims representative appropriately conferred with attorneys, considered "arguments advanced by counsel," and responded appropriately to "legal arguments and case law" and to "aggressive legal argument" from Plaintiff's counsel.  (ECF No. 81-3 at 12.)  Mr. Sands again ties this issue to whether Geico reasonably reached the conclusion "that it had made a commercially

25

reasonable offer of [UM/UIM] coverage" to Plaintiff, compliant with *Parfrey*, and his view that Geico appropriately responded to Plaintiff's legal arguments.  (*Id.*)  This is not ground that was covered by Mr. Torres, nor could it have been.  Geico fairly opened the door to rebuttal testimony from a lawyer or legal expert when it disclosed an expert opinion defending the reasonableness of its conduct based somewhat on "industry standards" but mostly based on the expert's review and response to legal arguments.

As to Mr. Baldwin's final point, he opines that Geico's investigation was unreasonable because it did not evaluate the scope of Plaintiff's injuries and medical bills, and that Geico therefore unreasonably failed to analyze its exposure in litigation. The Court concludes that this is a reasonable form of rebuttal to Mr. Sands's conclusions.  Mr. Sands opines, essentially, that Geico did everything it should have done in handling Plaintiff's claim, *i.e.,* everything the law requires.  Mr. Baldwin rebuts this by identifying a specific legal analysis which he believes Geico did not undertake, but should have.  (*See* ECF No. 81-2 at 8 (describing the analysis as "[w]hat is missing . . . [and] should have been done").)  In the circumstances of this case, the Court finds this was a fair and reasonable form of rebuttal testimony.

Finally, the Court concludes that to any extent Mr. Baldwin's report crept beyond the bounds of narrowly rebutting Mr. Sands's opinions, the additional disclosure was harmless within the application of Rule 37(c).  The Court has considerable discretion in this determination but is guided by the factors articulated in *Woodworker's Supply*: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness. 170 F.3d at 993.  These factors weigh rather heavily against excluding Mr. Baldwin's trial

testimony, as "[t]he decision to exclude evidence is a drastic sanction." *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997).

*First,* the Court sees no surprise.  The parties' scheduling order, as extended, contemplated disclosure of rebuttal witnesses.  Geico surely anticipated that Plaintiff might disclose *someone* to rebut Mr. Sands, and presumably an attorney.  They cite no authority which restricted Plaintiff to using only its original expert, Mr. Torres, in rebuttal once Geico had disclosed an expert with a different type of expertise.

*Second,* Geico has had ample opportunity to cure any prejudice.  Geico complains that it was unable to notice and complete a deposition of Mr. Baldwin within the discovery schedule, particularly given the requirement to provide 14 days advance notice of a deposition.  (*See* ECF No. 71 at 12–13 (citing D.C.COLO.LCivR. 30.1).)  But the scheduling problem was of Geico's making, since it requested a rebuttal deadline only five days before the close of discovery.  Under that schedule, *any* depositions of newly-disclosed rebuttal experts would most likely have needed to be completed past the existing discovery cutoff date.  How did Geico *expect* to conduct discovery of any rebuttal experts?  Moreover, it appears Geico simply never tried to take Mr. Baldwin's deposition, nor took any other particular steps to cure its alleged prejudice.  Since Plaintiff does not object now to an additional deposition of Mr. Baldwin (*see* ECF No. 81 at 14), the Court presumes Plaintiff also would have co-operated with a deposition following the rebuttal disclosure some months ago, *if* Geico had requested it.  It appears that Geico's counsel made a decision to seek a tactical advantage by filing a motion to exclude rather than attempting to actually cure Geico's supposed prejudice, when there was ample opportunity to do so.

To the extent there has been any prejudice, the Court will allow Mr. Sands to offer sur-rebuttal testimony in response to Mr. Baldwin's opinions at trial, as set out below.  In the Court's view, having the two similarly-qualified experts directly address one another's previously-disclosed opinions in front of the jury will best serve the interests of justice rather than rewarding either side for litigation gamesmanship.

*Third*, there is no potential for trial disruption as both parties have had, and still have, ample time to prepare their trial examinations of both Messrs. Baldwin and Sands, with trial still more than seven weeks away.

*Fourth,* the Court sees no bad faith here on the part of Plaintiff.  Plaintiff served his rebuttal disclosure on the deadline to do so, as did Geico.  Given the differing expertise of Messrs. Torres and Sands, the Court sees no impropriety in Plaintiff not choosing to affirmatively disclose an attorney in the first instance.  This is particularly true since the most significant portion of Mr. Sands's opinions goes to analyzing *Parfrey* standard, an issue on which Geico bears the burden.  Geico complains that Plaintiff could have disclosed Mr. Baldwin ahead of the deadline but did not do so.  This complaint rings hollow, given that Geico also served its own affirmative and rebuttal disclosures on the existing deadlines, but not a day before.  (*See* ECF Nos. 53, 58.)

In sum, the Court is unpersuaded that any aspect of Mr. Baldwin's proposed opinions were improperly disclosed, and it is also convinced that, to the extent any such non-disclosure did occur, it was harmless.  Therefore exclusion of Mr. Baldwin's testimony is not warranted but the Court grants very limited alternative relief in the interests of justice, as set forth below.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendant's Motion to Strike Report and Exclude Testimony of Plaintiff's Expert

David Torres (ECF No. 73) is GRANTED IN PART and DENIED IN PART, as set

out above;

2.      Defendant's Motion to Strike Plaintiff's Expert Witness Robert Baldwin (ECF No.

71) is GRANTED IN PART to allow "such other and further relief" as the Court

deems appropriate, per Defendant's request (*id.* at 15–16).  Specifically, the

Court WILL ALLOW Defendant's Expert, Mr. Sands, to offer limited and

narrowly-targeted sur-rebuttal testimony at trial, in direct response to the opinions

and testimony offered by Mr. Baldwin.  The Court will not require additional pre-

trial disclosure but emphasizes that the intent of this limited relief is ordered

solely in the interests of justice, to allow Messrs. Sands and Baldwin to each

directly address the previously-disclosed opinions of the other.  Any attempt to

unduly expand the scope of Mr. Sands's rebuttal of Mr. Baldwin will result the

exclusion of such testimony as a whole.  Defendant's Motion is in all other

respects DENIED.

Dated this 7th day of February, 2017

BY THE COURT:

William J. Martinez
United States District Judge