**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1838-WJM-MJW

DONALD O'SULLIVAN,

     Plaintiff,

v.

GEICO CASUALTY COMPANY,

     Defendant.

---

## ORDER ON MOTIONS *IN LIMINE*

---

     This insurance dispute is pending under the Court's diversity jurisdiction, 28 U.S.C. § 1332, and set for jury trial commencing April 10, 2017.  Plaintiff Donald O'Sullivan (Plaintiff, or "O'Sullivan") pursues claims for breach of contract, and for unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 & -1116 (*i.e.*, "statutory bad faith").  Now before the Court are Plaintiff's Motion *In Limine* (ECF No. 103 ("Plaintiff's Motion")), and Defendant's Second Amended Motion *In Limine* (ECF No. 110-1 ("Defendant's Motion")).  For the reasons explained below, each motion is granted in part and denied in part.

## I.  PLAINTIFF'S MOTION *IN LIMINE*

### A.    Plaintiff's Health Insurance

     Plaintiff moves to exclude "any evidence or mention of Plaintiff's health insurance," pursuant to the collateral source rule, as codified at Colorado Revised Statutes § 10-1-135(10)(a).  (ECF No. 103 at 2–3.)  Defendant is not opposed.  (ECF

No. 119 at 1.)  Accordingly, Plaintiff's Motion is GRANTED on this point.

**B.     Plaintiff's Prior Lawsuit**

Plaintiff moves to exclude evidence of a lawsuit he brought in 2008 or 2009. (ECF No. 103 at 3.)  Again, Defendant is not opposed.  (ECF No. 119 at 1.) Accordingly, Plaintiff's Motion is granted on this point.

**C.     Reasonableness of "Fairly Debatable" Claims**

Plaintiff moves to exclude Defendant's argument to the effect that its conduct in processing Plaintiff's insurance claim was reasonable because Plaintiff's claim for coverage was "fairly debatable."  (ECF No. 119 at 3–4.)  In support, Plaintiff cites *Nibert v. Geico Casualty* Co., ___ P.3d ___, ___ 2017 WL 710504, at *3 (Colo. App. Feb. 23, 2017) for the proposition that "the 'fairly debatable' issue is not relevant to a statutory delay claim pursuant to [Colo. Rev. Stat. §] 10-3-1116."  (*See* ECF No. 103 at 3.)

The Court agrees with Defendant that this statement in *Nibert*, taken in isolation, is not a correct statement of Colorado law.  The preceding paragraphs of the *Nibert* opinion review previous statutory bad faith cases, which hold that "fair debatability" is "not the sole inquiry in a reasonableness analysis," and is "not outcome determinative," but remains "a factor in the broader reasonableness inquiry."  *Nibert*, 2017 WL 710504, at *3 (citing *Fisher v. State Farm Mut. Auto. Ins. Co.*, ___ P.3d ___, ___, 2015 WL 2198515, at * 4–5, *cert. granted on other grounds*, 2016 WL 3207869 (Colo. June 6, 2016) and *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012)).

Both *Fisher* and *Vaccaro* analyzed statutory bad faith claims, and both concluded that the "fair debatability" defense applicable in common law bad faith cases does not imply that an insurance company's denial of a  "fairly debatable" claim is

2

necessarily reasonable as a matter of law. *Fisher*, 2015 WL 2198515, at *4 ("we disagree with State Farm that, under section 10–3-1115, an insurer's decision to delay or deny payment of a "fairly debatable" UIM claim cannot be unreasonable as a matter of law"); *Vaccaro*, 275 P.3d at 760 ("Even if plaintiff's claim for UIM benefits were 'fairly debatable' in the common law context, that would not alone establish that defendant's actions here were reasonable as a matter of law.").

Therefore, to the extent *Nibert* suggests that these prior holdings make "fair debatability" *irrelevant* in a statutory bad faith case, the Court finds this mis-states existing Colorado law, and instead follows the Tenth Circuit's synthesis of the law in Colorado on this issue: in a statutory bad faith claim, "fair debatability can be a relevant but not necessarily a determinative factor as to whether the insurer acted reasonably." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1227 (10th Cir. 2016).[1]

Since "fair debatability" is a relevant but not conclusive for the jury's "reasonableness" analysis under § 10-3-1115, Plaintiff's Motion is DENIED on this point.[2]  Defendant may present evidence of "fair debatability," including through its expert's testimony.

## D.      Option Form Mailed to Plaintiff After Policy Purchase

As detailed in the Court's summary judgment order, Plaintiff purchased his insurance policy through Defendant's website, and Defendant afterwards mailed him

---

[1]  The *Etherton* decision was also cited by the *Nibert* court.

[2]  While the Court has no reason to rule on other matters at this time, the Court anticipates applying to the law on this point as stated above throughout trial, including in instructing the jury.

certain documents, including an Option Form addressing Plaintiff's option to purchase uninsured/underinsured motorist ("UM/UIM") coverage at limits equal to his bodily injury ("BI") limits.  (*See generally* ECF No. 95 at 14–18.)  Plaintiff now moves to exclude the Option Form as irrelevant, arguing that Colorado Revised Statutes § 10-4-609(2) requires a sufficient offer of UM/UIM coverage options "*[b]efore* the policy is issued or renewed"  (emphasis added).

The Court rejects this argument for two reasons.  *First*, as just quoted, the statutory language contemplates an offer made before the policy is issued *or renewed*.  Here, it is undisputed that Plaintiff's policy had renewed prior to his insurance claim, and Defendant may present evidence that it sent one or more Option Forms to Plaintiff prior to or in conjunction with the renewal.  *Second*, the relevant case law contemplates that an "[i]f the insurer fails to discharge its duty prior to the issuance of the policy, the duty continues and can be discharged only by an adequate notification and offer *on some future occasion*."  *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 912 (Colo. 1992); *see also Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1168 (10th Cir. 2007) (concluding that, under the *Parfrey* standard applied to offer of extended personal injury protection ("PIP") coverage, the Option Form sent to Plaintiff after the policy issuance had contained an adequate offer of enhanced PIP coverage, as required by statute).

Accordingly, Plaintiff's Motion is DENIED on this point.  Defendant may present evidence related to the Option Form(s) sent to Plaintiff after his policy was purchased, as relevant to the "totality of the circumstances" to be considered under *Parfrey* in evaluating the sufficiency of Defendant's UM/UIM offer.

**E.     Plaintiff's Employment as a Software Engineer**

Plaintiff seeks to exclude evidence that he works as a software engineer and evidence or argument directed to "the background and training of the insured." (ECF No. 103 at 6–7.) Defendant argues that it should be allowed to present evidence of Plaintiff's employment as it tends to show he is "a sophisticated insured," whose "experience and knowledge" should be considered in the "totality of the circumstances" analysis of Defendant's UM/UIM offer under *Parfrey*. (ECF No. 119 at 4–5.)

As the Court observed in ruling on summary judgment, the relevant analysis "look[s] to the *objective* reasonableness of GEICO's offer, not the potential purchaser's subjective understanding." (ECF No. 95 at 19 (quoting *Reid*, 499 F.3d at 1169) (emphasis added).) *See also Reid*, 499 F.3d at 1169 ("none of the factors identified by the *Parfrey* court mention whether the insured actually understood the insurer's offer of coverage"); *cf. Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343–44 (Colo. 2004) ("[t]he reasonableness of an insurer's conduct is measured *objectively* based on industry standards" (emphasis added)).  Moreover, neither § 10-4-609(2) nor the relevant case reflect that an insurance company owes different duties to different customers based on whether it deems them to be "sophisticated," and Defendant does not suggest that its website provides different information to different customers based upon their occupations or supposed levels of sophistication.

Since the relevant legal test is an objective inquiry as to the sufficiency of the insurer's UM/UIM offer, rather than a subjective test of the insured's understanding of that offer, Plaintiff's Motion is GRANTED IN PART on this point.  The basic facts relating to Plaintiff's background, including his education and employment may be

briefly established in his testimony, in the usual course of introducing a witness to the jury and providing context for his or her testimony. However, Defendant is prohibited from making any argument—whether through lawyers' statements, expert testimony, cross-examination, or otherwise—suggesting the jury should consider Plaintiff's occupation or status as a "sophisticated insured" in evaluating the sufficiency of Defendant's UM/UIM offer.

**F.    The Fact Plaintiff Did Not Later Increase His UM/UIM Coverage**

Plaintiff seeks to preclude Defendant from introducing the fact that he has not increased his UM/UIM coverage to match his liability limits subsequent to the events at issue in this lawsuit. (ECF No. 103 at 7–8.) Defendant argues that this jury should be allowed to consider this fact as part of the "totality of the circumstances" relating to its UM/UIM offer under *Parfrey*.

As set out in the preceding section, the relevant test is an objective one of the sufficiency of Defendant's notification and offer regarding UM/UIM coverage, rather than a subjective analysis of the insured's intent or understanding. Argument that Plaintiff did not increase his UM/UIM coverage limits even after being definitively informed that they were lower than his liability coverage could tend to confuse or prejudice the jury's determination by focusing on Plaintiff's subjective intent or understanding of his coverage, rather than the objective sufficiency of Defendant's notification and offer. As such, this evidence is inadmissible under Rule 403.

Moreover, the relevant "totality of the circumstances" are those existing at the time the notification and offer regarding UM/UIM coverage is provided, since that is when an insurer must comply with its obligations under § 10-4-609(2) and *Parfrey*.

6

Circumstances arising thereafter, particularly after the insurance claim is filed, are not relevant to whether the offer was sufficient when it was made.  This evidence is therefore also inadmissible under Rules 401–02.

Accordingly, Plaintiff's Motion is GRANTED on this point, and Defendant may not present evidence or argument as to the fact that Plaintiff has not at any later time increased his UM/UIM coverage to match his liability limits.

**G.      Argument Based on Premiums Paid**

Plaintiff seeks to preclude argument "that Plaintiff is not entitled to a reformation of UIM coverage because he never paid insurance premiums for that level of coverage." (ECF No. 103.)  Subject to reserving its argument that subsequent mailings provided the required notice (*e.g.*, the Option Form, addressed in Part I.D., above), Defendant does not oppose this part of Plaintiff's Motion.  (ECF No. 119 at 6.)  Plaintiff's Motion is therefore GRANTED on this point.

**H.      Evidence that Defendant Changed its Website After the *Harrison* Decision**

Plaintiff argues that the Court should preclude any evidence that Defendant's website has been changed since the decision in *Harrison v. GEICO Casualty Co.*, 2010 WL 2004767 (D. Colo. May 19, 2010), because, Plaintiff argues that this Court "has already made the factual determination that defendant's website and information about UM/UIM coverage at the time Plaintiff purchased coverage was similar to the insufficient information defendant presented to the insured in the *Harrison* decision." (ECF No. 103 at 9.)

Plaintiff is mistaken.  The Court does not engage in fact-finding in resolving

motions for summary judgment, it only reviews the evidence which the parties choose to submit, to determine if genuine issues remain for trial.  Where, as here, factual issues *do* remain for trial, the jury resolves them.  *See generally* Fed. R. Civ. P. 56. Neither this Court's Summary Judgment Order (ECF No. 95) nor the summary judgment order in *Harrison* constitute controlling fact-finding.  The decision in this case is not bound by *Harrison*, and the relevant fact-finding and resolution of Plaintiff's claims remain issues for the jury.

Accordingly, to the extent it is otherwise relevant and admissible, both parties remain free to present evidence reflecting how the version of Defendant's website, as navigated by Plaintiff here, either was or was not different from the version in place at the time of *Harrison*.  In the main, the Court anticipates that such evidence would come in the form of the parties' competing legal experts.  As further addressed below in regards to Defendant's Motion on *Harrison*, these experts' opinions may be based on or include opinions about *Harrison* and each expert's opinions about how it should or should not influence the jury's decision here.  However, the factual determinations regarding the content of Defendant's website in this case remain an issue for the jury to address.  Plaintiff's Motion is therefore DENIED on this point.

## II.  DEFENDANT'S MOTION *IN LIMINE*

### A.    Plaintiff's Attorney's Correspondence With Defendant

Defendant moves to exclude certain correspondence sent to Defendant by Plaintiff's attorney, Mr. Hemmat, related to handling Plaintiff's claim and the communications preceding this lawsuit.  (*See* ECF No. 110-1 at 2–8.)

Defendant argues this correspondence is inadmissible as improper legal opinion from a non-designated expert, as improper testimony on an ultimate legal issues, as irrelevant, and as unduly prejudicial.  Plaintiff responds that the correspondence is relevant, in part because it shows that "Defendant was put on notice as to the applicable law in this matter and disregarded the law in continuing to refuse to pay Plaintiff's claim."  (ECF No. 123 at 3.)

The Court will exclude all of the correspondence identified by Defendant's Motion.  Initially, Mr. Hemmat remains Plaintiff's lawyer for trial.   He is not, and cannot be, called as a either a lay or expert witness.  Likewise, although Defendant does not make any hearsay argument, the Court fails to see how this correspondence amounts to anything other than inadmissible hearsay.  The letters are out-of-court statements written by Plaintiff's lawyer.  He now hopes to offer them at trial, to prove that the things he previously wrote down are true.  *See* Fed. R. Evid. 801–02.  By and large, these statements amount to Mr. Hemmat's own out-of-court assertions of facts relevant to Defendant's handling of Plaintiff's claims, or Mr. Hemmat's his own legal assertions and conclusions.  (See, *e.g.,* ECF No. 110-1 at 16 (describing receipt of payment "towards the $100,000 that you owe the insured," and opining that "[y]our office has not been able to produce any documentation verifying that the client was properly given notice of his rights"); *id.* at 21 ("I did not find any document proving that Geico complied with the law").)

In addition, the correspondence contains numerous prejudicial statements that are inadmissible under Rule 403 because they more prejudicial than probative.  (*See, e.g.*, id. at 23 ("As corporate insurance folks in Texas, you may see *Harrison* and Judge

9

Matsch as 'just one district court . . . .'  But here in Colorado, we follow the rules . . . .");
*id.* at 25 ("As my Grandpa would say, 'you are talking an awful lot but saying very little.'").)  Of course the Court is well aware that lawyers routinely send each other similar and far worse "nasty-grams" in the course of disputes.  Perhaps that sometimes serves clients' best interests.  But the Court not admit such self-serving lawyer correspondence into evidence at trial.

Finally, Plaintiff also argues that his expert witness, Mr. Baldwin, relies on and agrees with the legal opinions expressed in Mr. Hemmat's letters.  To the extent Plaintiff argues that Mr. Baldwin's opinion testimony "renders any alleged 'expert' opinion by [Mr.] Hemmat moot" (ECF No. 123 at 2), the Court agrees—since Mr. Baldwin will be offering legal opinions, and Mr. Hemmat will presumably argue his view of the law at trial, there is no added value to also admitting Mr. Hemmat's statements and opinions in writing, and they are excluded as cumulative.  Fed. R. Evid. 403.

It is, however, true that Mr. Baldwin may rely upon the inadmissible letters as a basis for his opinions, assuming they amount to facts or data that he "has been made aware of or personally observed," and that Plaintiff can demonstrate that experts in this field reasonably rely such correspondence.  Fed. R. Evid. 703.  But, where an expert's reliance materials are otherwise inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  *Id.*  Here, the Court finds that the Hemmat correspondence is more prejudicial than probative, so it may not be disclosed to the jury.  In addition, Mr. Baldwin's testimony cannot act as a "conduit for

hearsay."[3]  Therefore, the fact that Mr. Baldwin may agree with the legal opinions of the lawyer who retained him does not make these documents admissible.

Finally, Plaintiff cites the decision of U.S. District Judge Philip A. Brimmer for the observation that similar attorneys' correspondence is "frequently introduced as evidence during trials over coverage disputes."  *Etherton v. Owners Ins. Co.*, 2013 WL 68702 (D. Colo. Jan. 7, 2013.)  This point in and of itself does not require special attention.  The statement that such letters may be "frequently introduced" has little bearing on whether they are actually admissible.  In any case, opposing counsel may, for various reasons, make no objection to such documents, just as Defendant does not object to all of Mr. Hemmat's correspondence here.  (*See generally* ECF No. 129.)

The Court takes time to note Plaintiff's citation to *Etherton* here only because it so flagrantly stands for exactly the opposite proposition for which Plaintiff argues. *Etherton* was also a case involving Mr. Hemmat.  There too, he sought to introduce his own correspondence into evidence.  Judge Brimmer excluded the objected-to correspondence as "inflammatory" noting "appears to have been interjected for rhetorical purposes."  The "frequently introduced" statement quoted by Plaintiff here was used *only* to make the point that it appeared the inflammatory correspondence was written precisely with the anticipation of later seeking to use it as evidence.  Suffice to

---

[3] *See Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 323 (10th Cir. 1989) (collecting cases that "have admitted expert opinion testimony but have excluded hearsay evidence offered in support of that testimony, both on direct and cross-examination:); *see generally* 3 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence, § 7:16 (4th ed., May 2016 update) ("While an expert may consider remote statements that are not admitted and may be inadmissible, he cannot properly act as a conduit by presenting an opinion that is not his own opinion but that of someone else, and should not testify that others agree with him as a means of vouching for or reinforcing any opinion of his own that he presents, at least in relation to central or contested matters.").

say, the decision and analysis in *Etherton* further weigh in favor of excluding Mr. Hemmat's correspondence.

Therefore, the Court GRANTS Defendant's Motion on this point and will exclude in its entirety the correspondence identified and objected-to in Defendant's Motion. (*See* ECF No. 110-1 at 16–25.)

## B.   The *Harrison* Decision

Finally, Defendant seeks to preclude Plaintiff from introducing into evidence the court's decision in *Harrison*.  (See ECF No. 110-1 at 12.)  Defendant argues that *Harrison* is not sufficiently similar to this case to be relevant (*id.* at 9–10), and that Plaintiff has no valid theory for admitting this prior judicial decision into evidence (*id.* at 9–11.)[4]

As discussed above, the Court agrees with Plaintiff to the extent that judicial decisions, including *Harrison*, may inform one or both experts' opinions regarding objective industry standards or practices.  Subject to any other objections such opinions are relevant and admissible under Rules 702 and 401–02.

However, under Rules 702 and 703, the fact that an expert opining on insurance standards or legal matters may rely on judicial decisions does not make those decisions themselves admissible or necessarily allow them to be disclosed to the jury or admitted into evidence.  Plaintiff does not offer any other response to Defendant's argument that

---

[4] This issue may well be moot, given that the *Harrison* decision is not included on Plaintiff's final pretrial exhibit list.  (See ECF No. 129.)  However, it is conceivable that *Harrison* was nevertheless fairly disclosed among Plaintiff's catch-all designation of "all exhibits necessary for impeachment and/or rebuttal," and Plaintiff opposes Defendant's Motion on this issue, so the Court resolves it.

there is no basis for admitting *Harrison*, since it neither constitutes a prior judicial admission, nor has any preclusive or *res judicata* effect in this case.

Beyond that, the Court concludes that admission of a legal decision as evidence for review by a jury comprised of non-lawyers would likely cause the jury undue confusion and delay. *Harrison* is neither binding nor precedential and cannot supplant the Court's instructions to the jury. Moreover, if the Court admitted *Harrison* it would likely also need to admit any judicial decisions which Defendant deems relevant. Jury deliberation would then amount to asking non-lawyer jurors to read and apply competing case law. Among the many ways that result would be problematic, it suffices to state here that even if Plaintiff had established an otherwise viable basis for admitting the *Harrison* decision into evidence, the Court would still exclude it as unduly prejudicial and time-wasting under Rule 403.

Accordingly, Defendant's Motion IS GRANTED IN PART AND DENIED IN PART on this point. Plaintiff will not be allowed to introduce the *Harrison* decision itself into evidence. However, in keeping with Rules 702, 703, and 705, Defendant's request to preclude "any reference thereto" is denied; to the extent consistent with their disclosures and otherwise admissible, either or both parties' experts may offer opinions regarding whether and/or how the *Harrison* decision should (or should not) inform the jury's decision in this case.[5]

---

[5] Plaintiff's request for a hearing on Defendant's Motion *In Limine* (*see* ECF No. 123 at 5) is denied as moot, since the Court finds it can readily resolve the issues raised without a hearing.

### III. CONCLUSION

For the reasons stated, Plaintiff's Motion *In Limine* (ECF No. 103) is GRANTED

IN PART and DENIED IN PART, as set out above.  Defendant's Second Amended

Motion *In Limine* (ECF No. 110-1) is likewise GRANTED IN PART AND DENIED IN

PART, as set out above.


Dated this 24th day of March, 2017

BY THE COURT:

William J. Martinez
United States District Judge